1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

**BRIAN MATTHEW SAUDE,**

Petitioner,

v.

**RANDY GROUNDS, Warden,**

Respondent.

**Case No. 1:13-cv-00948 AWI MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

11
12
13
14
15
16
17

18      Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19   corpus under 28 U.S.C. § 2254. Respondent, warden of Salinas Valley State Prison, is

20   substituted as the proper named respondent under Rule 25(d) of the Federal Rules of

21   Civil Procedure. Respondent is represented by Tami M. Krenzin of the office of the

22   California Attorney General. The parties declined magistrate judge jurisdiction under 28

23   U.S.C. § 636(c). (ECF No. 9, 15.)

24

25   **I.   PROCEDURAL BACKGROUND**

26      Petitioner is in the custody of the California Department of Corrections pursuant to

27   a judgment of the Superior Court of California, County of Merced, following his conviction

28   by a jury on December 11, 2009, for attempted murder, shooting at an occupied motor

1  vehicle, and active participation in a criminal street gang with firearm enhancements.
2  (Clerk's Tr. at 160-63.) On January 13, 2010, Petitioner was sentenced to an
3  indeterminate term of fifteen years to life consecutive to a term of twenty years to life in
4  prison. (Id.)

5      Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate
6  District on November 3, 2010. (Lodged Doc. 2.) On September 1, 2011, the appellate
7  court affirmed the conviction. (Lodged Doc. 1.) The California Supreme Court summarily
8  denied Petitioner's petition for review on November 16, 2011. (Lodged Docs. 5-6.)

9      Petitioner next sought collateral review of the petition by way of a petition for writ
10 of habeas corpus filed with the Merced County Superior Court on December 18, 2012.
11 (Lodged Doc. 7.) The petition was denied on February 15, 2013. (Lodged Doc. 8.)
12 Petitioner filed a petition for writ of habeas corpus with the Fifth District Court of Appeal
13 on March 28, 2013. (Lodged Doc. 9.) The petition was denied on April 9, 2013. (Lodged
14 Doc. 10.) Finally, Petitioner filed a petition for review with the California Supreme Court
15 on April 24, 2013. (Lodged Doc. 11.) The petition was denied on June 12, 2013. (Lodged
16 Doc. 12.)

17     Petitioner filed his federal habeas petition on June 21, 2013. (Pet., ECF No. 1.)
18 The petition raised two grounds for relief: 1) ineffective assistance of counsel for failing
19 to object to inadmissible opinion testimony of the prosecution's gang expert; and 2)
20 ineffective assistance of counsel for failing to move to suppress statements made after
21 Petitioner invoked his Miranda rights. On July 1, 2013, Petitioner filed an amended
22 petition. (ECF No. 8.) The amended complaint corrected pagination errors in the original
23 petition, but did not modify the claims presented.

24     Respondent filed an answer to the petition on August 22, 2013. (Answer, ECF No.
25 12.) Petitioner filed a traverse on September, 23, 2013. (Traverse, ECF No. 16.)

26
27
28

2

1

2

## II.   STATEMENT OF THE FACTS[1]

3

4

5

6

7

> On April 26, 2009, Anthony Sanchez drove to his infant son's mother's home in Delhi. Sanchez's brother, waiting outside in the car while Sanchez went to the door to pick up his son, saw Saude peeking over a fence from his house across the street. Saude "looked like he was focused" on Sanchez, who put his son into his car seat and started to drive away. Sanchez stopped when Saude ran toward the car as if to tell him something. Saude pointed a gun at Sanchez's face. Sanchez "hit reverse and floored the gas." Saude fired a shot that put a bullet hole through the driver's side of the windshield.

People v. Saude, 2011 Cal. App. Unpub. LEXIS 6648, 1-2 (Cal. App. Sept. 1, 2011).

8

## III.   DISCUSSION

9

### A.   Jurisdiction

10

11

12

13

14

15

16

17

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

18

### B.   Legal Standard of Review

19

20

21

22

23

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

24

25

26

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution

27

28

---

[1] The Fifth District Court of Appeal's summary of the facts in its September 1, 2011 opinion is presumed correct.  28 U.S.C. § 2254(e)(1).

1  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

2  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

3  state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8  28 U.S.C. § 2254(d).

9           1.    Contrary to or an Unreasonable Application of Federal Law

10        A state court decision is "contrary to" federal law if it "applies a rule that

11  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

12  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

13  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

14  "AEDPA does not require state and federal courts to wait for some nearly identical

15  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

16  even a general standard may be applied in an unreasonable manner" Panetti v.

17  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

18  "clearly established Federal law" requirement "does not demand more than a 'principle'

19  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

20  decision to be an unreasonable application of clearly established federal law under §

21  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

22  (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

23  71 (2003).  A state court decision will involve an "unreasonable application of" federal

24  law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

25  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

26  Court further stresses that "an *unreasonable* application of federal law is different from

27  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

28  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

4

1    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

2    correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

3    U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

4    have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.

5    Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

6    Federal law for a state court to decline to apply a specific legal rule that has not been

7    squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

8    (2009), quoted by Richter, 131 S. Ct. at 786.

9                        2.      Review of State Decisions

10        "Where there has been one reasoned state judgment rejecting a federal claim,

11   later unexplained orders upholding that judgment or rejecting the claim rest on the same

12   grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

13   "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

14   (9th Cir. 2006). Determining whether a state court's decision resulted from an

15   unreasonable legal or factual conclusion, "does not require that there be an opinion from

16   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

17   "Where a state court's decision is unaccompanied by an explanation, the habeas

18   petitioner's burden still must be met by showing there was no reasonable basis for the

19   state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

20   not require a state court to give reasons before its decision can be deemed to have been

21   'adjudicated on the merits.'").

22        Richter instructs that whether the state court decision is reasoned and explained,

23   or merely a summary denial, the approach to evaluating unreasonableness under §

24   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

25   or theories supported or, as here, could have supported, the state court's decision; then

26   it must ask whether it is possible fairminded jurists could disagree that those arguments

27   or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

28   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

                                            5

1  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

2  authority to issue the writ in cases where there is no possibility fairminded jurists could

3  disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

4  it yet another way:

> As a condition for obtaining habeas corpus relief from a federal
> court, a state prisoner must show that the state court's ruling on the claim
> being presented in federal court was so lacking in justification that there
> was an error well understood and comprehended in existing law beyond
> any possibility for fairminded disagreement.

8  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

9  are the principal forum for asserting constitutional challenges to state convictions." Id. at

10  787. It follows from this consideration that § 2254(d) "complements the exhaustion

11  requirement and the doctrine of procedural bar to ensure that state proceedings are the

12  central process, not just a preliminary step for later federal habeas proceedings." Id.

13  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

14                    3.    Prejudicial Impact of Constitutional Error

15         The prejudicial impact of any constitutional error is assessed by asking whether

16  the error had "a substantial and injurious effect or influence in determining the jury's

17  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

18  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

19  state court recognized the error and reviewed it for harmlessness).  Some constitutional

20  errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

21  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

22  (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

23  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

24  Strickland prejudice standard is applied and courts do not engage in a separate analysis

25  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

26  v. Lamarque, 555 F.3d at 834.

27

28

6

1    IV.    **REVIEW OF PETITION**

2        A.    **Claim One: Ineffective Assistance of Counsel – Gang Expert**

3        Petitioner claims that counsel was ineffective for failing to object to the testimony

4    of the prosecution's gang expert. (ECF No. 8 at 5-11.)

5            1.    Law Applicable to Ineffective Assistance of Counsel Claims

6        The law governing ineffective assistance of counsel claims is clearly established

7    for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

8    Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

9    corpus alleging ineffective assistance of counsel, the Court must consider two factors.

10   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

11   v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

12   performance was deficient, requiring a showing that counsel made errors so serious that

13   he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

14   Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

15   below an objective standard of reasonableness, and must identify counsel's alleged acts

16   or omissions that were not the result of reasonable professional judgment considering

17   the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

18   (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

19   indulges a strong presumption that counsel's conduct falls within the wide range of

20   reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

21   Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

22       Second, the petitioner must demonstrate that "there is a reasonable probability

23   that, but for counsel's unprofessional errors, the result ... would have been different."

24   Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

25   as to deprive defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The

26   Court must evaluate whether the entire trial was fundamentally unfair or unreliable

27   because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United

28   States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

1    A court need not determine whether counsel's performance was deficient before

2    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

3    Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

4    deficiency that does not result in prejudice must necessarily fail.  However, there are

5    certain instances which are legally presumed to result in prejudice, e.g., where there has

6    been an actual or constructive denial of the assistance of counsel or where the State has

7    interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at

8    659, and n. 25 (1984).

9    As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

10   standard for ineffective assistance of counsel in federal habeas is extremely difficult:

11       The pivotal question is whether the state court's application of the
12   Strickland standard was unreasonable. This is different from asking
     whether defense counsel's performance fell below Strickland's standard.
13   Were that the inquiry, the analysis would be no different than if, for
     example, this Court were adjudicating a Strickland claim on direct review
14   of a criminal conviction in a United States district court. Under AEDPA,
     though, it is a necessary premise that the two questions are different. For
15   purposes of § 2254(d)(1), "an unreasonable application of federal law is
     different from an incorrect application of federal law." Williams, supra, at
16   410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
     deference and latitude that are not in operation when the case involves
17   review under the Strickland standard itself.

18       A state court's determination that a claim lacks merit precludes
     federal habeas relief so long as "fairminded jurists could disagree" on the
19   correctness of the state court's decision. Yarborough v. Alvarado, 541
     U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
20   Court has explained, "[E]valuating whether a rule application was
     unreasonable requires considering the rule's specificity. The more general
21   the rule, the more leeway courts have in reaching outcomes in case-by-
     case determinations." Ibid. "[I]t is not an unreasonable application of
22   clearly established Federal law for a state court to decline to apply a
     specific legal rule that has not been squarely established by this Court."
23   Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
     2d 251, 261 (2009) (internal quotation marks omitted).

24   Harrington v. Richter, 131 S. Ct. at 785-86.

25   "It bears repeating that even a strong case for relief does not mean the state

26   court's contrary conclusion was unreasonable."  Id. at 786.  "As amended by AEDPA, §

27   2254(d) stops short of imposing a complete bar on federal court relitigation of claims

28   already rejected in state proceedings."  Id.  "As a condition for obtaining habeas corpus

1  from a federal court, a state prisoner must show that the state court's ruling on the claim

2  being presented in federal court was so lacking in justification that there was an error

3  well understood and comprehended in existing law beyond any possibility for fairminded

4  disagreement." Id. at 786-87.

5      Accordingly, even if Petitioner presents a strong case of ineffective assistance of

6  counsel, this Court may only grant relief if no fairminded jurist could agree on the

7  correctness of the state court decision.

8              2.   State Court Decision

9      Petitioner presented this claim by way of direct appeal to the California Court of

10  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

11  appellate court and summarily denied in a subsequent petition for review by the

12  California Supreme Court. (See Lodged Docs. 1, 6.) Because the California Supreme

13  Court's opinion is summary in nature, this Court "looks through" that decision and

14  presumes it adopted the reasoning of the California Court of Appeal, the last state court

15  to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3

16  (1991) (establishing, on habeas review, "look through" presumption that higher court

17  agrees with lower court's reasoning where former affirms latter without discussion); see

18  also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts

19  look to last reasoned state court opinion in determining whether state court's rejection of

20  petitioner's claims was contrary to or an unreasonable application of federal law under

21  28 U.S.C. § 2254(d)(1)).

22      In denying Petitioner's claim, the California Court of Appeal explained:

23  **1. Assistance of Counsel**

24      Saude argues that his attorney was ineffective by failing to object,
    not only to the gang expert's testimony about telling a fellow officer Saude
25  might be a possible suspect, but also to a detective's testimony about
    Saude invoking his Miranda[fn2] rights, and that the cumulative impact of
26  the individual errors prejudiced him. The Attorney General argues the
    contrary.

27
    FN2: Miranda v. Arizona (1966) 384 U.S. 436 (Miranda).
28

To establish ineffective assistance of counsel, the defendant has the burden of showing that the attorney's performance not only "fell below an objective standard of reasonableness" but also prejudiced the defense. (Strickland v. Washington (1984) 466 U.S. 668, 684-692; People v. Ledesma (1987) 43 Cal.3d 171, 216-217.) The defendant also has the burden of showing that the attorney's act or omission was not attributable to a tactical decision that a reasonably competent and experienced criminal defense attorney would make. (People v. Gurule (2002) 28 Cal.4th 557, 610-611.) If the defendant makes an insufficient showing that the attorney's performance fell below the requisite standard or prejudiced the defense, the ineffective assistance of counsel claim fails. (People v. Rodrigues (1994) 8 Cal.4th 1060, 1126.) If the record fails to show the reason for the acts or omissions challenged on appeal, our duty is to affirm unless there could be no satisfactory explanation. (People v. Anderson (2001) 25 Cal.4th 543, 569.) That is so here. The gang expert testified that he told a fellow officer Saude might be a possible suspect due to the "area that it happened, the description of the suspect, and the victim." Asked if he was familiar with the victim, he answered, "Yes." Asked how, he testified, "Several years ago, I was told of an incident regarding the victim and Brian Saude."

The detective testified Saude acted "cocky" after his arrest, saying things like "might as well let me go right now" and "didn't do nothing." After learning he was a suspect in a shooting around the corner from the house, he "slumped down in his seat, seemed to become nervous," and started to "stutter" and "stammer." As the detective started reading him his Miranda rights, Saude interrupted him, saying, "I don't even know what you're talking about. I want to talk to a lawyer."

As to the gang expert's testimony, Saude analogizes his case to, inter alia, People v. Coffman and Marlow (2004) 34 Cal.4th 1, 77 (Coffman and Marlow) ("A witness may not express an opinion on a defendant's guilt ... not because guilt is the ultimate issue of fact for the jury ... [but because] opinions on guilt or innocence ... are of no assistance to the trier of fact."), People v. Killebrew (2002) 103 Cal.App.4th 644, 651 (Killebrew) (A "'statement by the witness which amounts to no more than an expression of his general belief as to how the case should be decided ... would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision.'"), and People v. Torres (1995) 33 Cal.App.4th 37, 47-48 (Torres) (The "rationale which prohibits the witness from expressing an opinion on the meaning of statutory terms or the guilt of the defendant also prohibits the witness from expressing an opinion as to whether a crime has been committed.")

Here, however, the gang expert did not express an opinion on Saude's guilt, on how the case should be decided, or on whether a crime had been committed. Nor did he express an opinion on whether Saude was the shooter or on whether Saude "had specific knowledge or possessed a specific intent." (Killebrew, supra, 103 Cal.App.4th at p. 658.) He simply testified, on the basis of the "area that it happened, the description of the suspect, and the victim," that as soon as he heard about the shooting he gave Saude's name to a fellow officer as someone who (in the prosecutor's words) "*might be a possible* suspect." (Italics added.) Saude's reliance on Coffman and Marlow, Killebrew, and Torres is misplaced.

Even if the gang expert's testimony was inadmissible, an attorney's decision whether to object to inadmissible evidence is a tactical decision that receives substantial deference on appeal, and the absence of an objection seldom establishes ineffective assistance of counsel. (People v. Williams (1997) 16 Cal.4th 153, 215.) Saude's attorney might well have decided to forego an objection so as not to draw the jury's attention to a passing reference to him as someone who might be a possible suspect. (3 RT 844-846)

As to the detective's testimony, Saude analogizes his case to, inter alia, Doyle v. Ohio (1976) 426 U.S. 610, 619 (Doyle) (Since "every post-arrest silence is insolubly ambiguous" and "assurance that silence will carry no penalty ... is implicit to any person who receives the warnings," "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."), Coffman and Marlow, supra, 34 Cal.4th at p. 118 ("No less unfair is using that silence against a defendant by means of the prosecutor's examination of an interrogating detective even before the defendant has had the opportunity to take the stand."), and People v. Guajardo (1994) 23 Cal.App.4th 1738, 1743 (Guajardo) ("Any doubt [the arresting officer] might have had would have been resolved by [the defendant's] demonstrated consciousness of guilt (he kept looking around as he approached the patrol car, appearing nervous and anxious to leave the area).")

Here, however, Saude's attorney stipulated to the admission in evidence of his having changed his demeanor "from confident to nervous," his having "slumped slightly in his chair," and his having interrupted the detective during the reading of his Miranda rights to say "that he did not know anything about that and did not want to say anything." The stipulation enabled his attorney to argue to the jury that "when he is accused of the crime, yes, he changes reactions. I think anyone changes reactions," and to emphasize to the jury that "what's more telling is his reaction when they then begin to read him his Miranda rights. He breaks in, interrupts them, and says 'I don't know anything about that and I'm not going to answer any of your questions. I want a lawyer.' That's the response of an innocent person, okay. He didn't try to talk his way out of it. He didn't try to explain anything. He exercised his constitutional rights, and in so doing, said, 'I don't know anything about this.'" No stipulation to the admission in evidence of pre-Miranda and post-Miranda statements was at issue in Doyle, Coffman and Marlow, or Guajardo. Saude's reliance on those cases is misplaced.

Even if stipulating to be able to argue to the jury that his pre-Miranda and post-Miranda statements showed his innocence was not a reasonable tactical decision, Saude has the burden, to establish prejudice, of showing a "reasonable probability" "sufficient to undermine confidence in the outcome" that but for his attorney's performance "the result of the proceeding would have been different." (Strickland, supra, 466 U.S. at pp. 693-694; Ledesma, supra, 43 Cal.3d at pp. 217-218.)

From jail, Saude made several incriminating phone calls. In one, he said, "I'll probably get like about 20 years or some shit probably" and added that "it ain't even lookin' too good right now." In another, he said to "talk to him and see what he says." He added, "It's the only way I can get

1    out." In another, he said to "get at the homies." In yet another, he said to
2    "get at them for sure." In still another, he said to "tell him, know what I
     mean, be cool or whatever." He implied, in the gang expert's words, that
3    Sanchez and his brother and other witnesses should "change their story or
     not cooperate with law enforcement."

4         At trial, Sanchez's brother positively identified Saude as the
     shooter. He testified that while waiting in the car as Sanchez picked up his
5    son he saw Saude across the street, first in one place, then in another,
6    looking at Sanchez. Saude and Sanchez's son's mother lived across the
     street from each other. The area was hotly disputed between Norteños
7    and Sureños. Saude was an active member of a Norteños gang that did
     not get along well with the Sureño gang to which Sanchez used to belong.
     A few years earlier, Saude had called Sanchez a "scrap," a derogatory
8    term Norteños use to degrade Sureños.

9         On a record of overwhelming evidence of his guilt, Saude fails to
     discharge his burden of showing that his attorney's performance fell below
10   an objective standard of reasonableness and prejudiced the defense.
11   Since he fails to persuade us that any error occurred, his cumulative error
     argument likewise is meritless. (<u>People v. Heard</u> (2003) 31 Cal.4th 946,
     982.)

12   <u>People v. Saude</u>, 2011 Cal. App. Unpub. LEXIS 6648, 1-10 (Cal. App. Sept. 1, 2011).

13              3.    <u>Analysis</u>

14        The gang expert testified that he had suggested to another officer that Petitioner

15   should be a suspect.  Petitioner claims this was improper opinion testimony and that

16   counsel was ineffective by failing to object to it. Petitioner also argues that the admission

17   of the testimony was prejudicial because a jury would find such an experienced gang

18   investigation officer's opinion persuasive. (Traverse, ECF No. 16 at 5-12.) The gang

19   expert was familiar with the gangs in the local area and had interactions with both

20   Defendant and the victim. (<u>Id.</u>) Petitioner asserts that the testimony prejudicially focused

21   the investigation on him, when there were several dozen other gang members in the

22   area that would have similar motive to commit the crime. (<u>Id.</u>)

23        Respondent contends that trial counsel's actions were reasonable, and that

24   Petitioner was not prejudiced by the failure to object to the testimony. Respondent notes

25   that the gang expert did not testify that Petitioner committed the crime; only that

26   Petitioner should be a possible suspect. (Answer, ECF No. 12 at 10.) As other evidence

27   linked Petitioner to the shooting, Respondent contends that it was reasonable for law

28   enforcement to conclude that Petitioner was a suspect and the officer's opinion would

1   not have been excluded as inadmissible opinion testimony. (Id.)

2          Respondent also describes the other evidence linking Petitioner to the crime: that

3   Petitioner was an active gang member who lived in the house across street (Rep. Tr.

4   661-63, 754, 669, 687-88); the shooting occurred in disputed gang territory (Rep. Tr.

5   906); the victim and his brother identified Petitioner as the shooter (Rep. Tr. 792, 798-99,

6   816); the victim testified that he had a prior incident with Petitioner (Rep. Tr. 745); and

7   that Petitioner made incriminating jail telephone calls from jail. (Augmented Clerk's Tr. 1-

8   24). Based on the significant other evidence against Petitioner, Respondent argues that

9   it was reasonable not to object and draw additional attention to the gang expert's

10  testimony.

11         The state court's decision was not an unreasonable application of federal law.

12  The court afforded counsel wide latitude in his professional judgment as to whether to

13  object to the testimony. Based on the information presented at trial, a reasonable juror

14  would have expected Petitioner to be a suspect based on his criminal gang involvement,

15  the close proximity of the crime to Petitioner's residence, and the fact that Petitioner and

16  the victim had a prior run-in with the victim. Therefore it was reasonable trial strategy not

17  to object to the question and draw further attention to all the incriminating details as to

18  why law enforcement officers thought Petitioner was a suspect. Even if Petitioner could

19  show that counsel's failure to object was unreasonable, Petitioner has not proven that he

20  was prejudiced by the action. The fact that law enforcement thought that Petitioner might

21  be a suspect was much less harmful evidence than the identification of Petitioner by the

22  victim and the victim's brother and Petitioner's incriminating statements after the fact.

23         Petitioner has not shown that trial counsel was ineffective. Moreover, Petitioner

24  has not met his burden of showing that but for counsel being ineffective, there was a

25  "reasonable probability that… the result ... would have been different." Strickland, 466

26  U.S. at 694. The prosecution presented strong evidence of Petitioner's guilt based on the

27  identification testimony and Petitioner's statements while in custody. It is unlikely that

28  jurors would have not found Petitioner guilty in light of the other evidence. Fairminded

1  jurists could therefore disagree with the correctness of the state court decision that

2  counsel's failure to object to the admission of the testimony as not "so serious as to

3  deprive defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at

4  487.  Petitioner's first claim of ineffective assistance of counsel is without merit.

5  **B.    Claim Two: Ineffective Assistance of Counsel – Miranda Warning**

6       Petitioner, in his second claim, asserts that counsel was ineffective for stipulating

7  to allow the admission of Petitioner's actions and statements during his interrogation by

8  the police.  Counsel stipulated to allow the evidence so that he could argue that

9  Petitioner's actions upon being accused of the crime, specifically, becoming nervous,

10 denying he committed the crime, and requesting an attorney, were actions evincing

11 Petitioner's innocence.

12      Petitioner disagrees. He believes counsel's actions were unreasonable because

13 jurors would interpret his invocation of his right to silence as an indication of his guilt.

14 Further, Petitioner contends that the error was prejudicial as the evidence presented

15 against Petitioner was not sufficiently strong and the presentation of the interrogation

16 evidence was critical in the juror's determination of his guilt.

17      The state court found that counsel's strategic decision to allow the admission of

18 the evidence from the interrogation was strategic and entitled to strong deference. The

19 Court agrees. First, nothing provided from the interrogation strongly implicated Petitioner

20 in the crime. Petitioner denied his involvement in the crime. Petitioner became nervous,

21 and he invoked his constitutional rights not to talk. These actions could, and indeed

22 were, argued by opposing counsel in support of the position of each regarding guilt  or

23 innocence. Regardless of its actual success at trial, counsel's strategic decision to allow

24 the evidence was reasonable, and entitled to deference. Strickland, 466 U.S. at 681.

25 Petitioner has not shown that the state court determination that counsel's actions were

26 reasonable was an unreasonable determination of federal law.

27      Further, the state court's determination that there was no prejudice to Petitioner

28 was likewise reasonable. Petitioner has not shown that there was a "reasonable

probability" "sufficient to undermine confidence in the outcome" that but for his attorney's performance "the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 693-694. The state court reasonably relied on the significant eyewitness evidence and incriminating statements by Petitioner to establish that there was "overwhelming evidence of his guilt" <u>People v. Saude</u>, 2011 Cal. App. Unpub. LEXIS 6648 at 9-10.

Petitioner has not shown that counsel fell below a reasonable standard of conduct or that Petitioner was prejudiced by counsel's performance. The California court's rejection of the ineffective assistance of counsel claim was not contrary to nor an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). It is recommended that Petitioner's second claim of ineffective assistance of counsel be denied.

## V.   RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, under 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.


Dated:   __January 14, 2015__          /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE